Thomas F. MILLER, Appellant,

v.

Charles R. BAUM et al., Appellees.

No. 12757.

Court of Civil Appeals of Texas.

Galveston.

Nov. 4, 1954.

Rehearing Denied Dec. 2, 1954.

J. Leonard Gotsdiner and Fred Lewis, Houston, for appellant.

Fred D. Jamail and C. B. Stanley, Houston, for appellees.

CODY, Justice.

This was a suit by appellant, Thomas F. Miller, doing business under the tradename of Major Supply Company, against appellees, Charles R. Baum & Son, a partnership consisting of Charles R. Baum, Sr., and Jr.; and the suit was also against Arthur Morse and the Humble Oil & Refining Company. The facts on which appellant based his suit were these:

In early July, 1952, the Humble Oil & Refining Company made a contract with appellees to construct a filling station in Angleton for the agreed price of $23,130. In early August, 1952, appellees subcontracted a part of the construction to defendant, Arthur Morse, the labor and material on his subcontract to be supplied for $5,970. By the terms of the contract 85% of the contract price was to be advanced as the construction progressed. Defendant Morse was unable to finance his part of the construction, and on August 9, 1952, he entered into an agreement with appellant to furnish him such sums of money as he should need to comply with his subcontract, it being further agreed that as sums should become due defendant Morse from appellees, appellant and Morse would try to get appellees to pay same jointly to defendant and appellant. And on the same date, as aforesaid, appellees were given oral notice of said arrangement, and executed the following written acknowledgment:

"Houston, Texas, August 9th, 1952. "This is to acknowledge your request to make all checks for the work done on the Humble Oil Company's service station at Angleton, Texas, payable jointly to Arthur C. Morse and Major Supply Company.

Charles R. Baum & Son
By: Charles R. Baum, Sr."

Thereafter, during the progress of construction under aforesaid subcontract, appellees paid by checks, jointly to defendant Morse and appellant, the sum of $4,000. Thereafter, about September 16, 1952, defendant Morse abandoned work on his subcontract, leaving it substantially incomplete; thereupon appellees completed the work, so abandoned, according to the prescribed plans and specifications, at an additional cost of $2,348.31. Appellees had, as stated before, paid upon said contract the sum of $4,000. Additionally, the Collector of Internal Revenue had levied upon any sums due from appellees to defendant Morse, and by and under the authorization of defendant Morse, appellees paid to the Collector the sum of $600 for the account of defendant Morse. Said payment was so made with the prior knowledge and consent of appellant. In short, appellees were compelled to pay out for the completion of the subcontract, which defendant Morse had bound himself to complete for the agreed amount of $5,970, the sums of $4,000, plus $600, plus $2,348.31, or the total sum of $6,948.31, which exceeded the subcontract price of $5,970 by the sum of $978.31.

At the time appellant brought his suit, the Humble Oil & Refining Company was retaining in its hands the sum of $1,970 which it admittedly owed under the terms of its contract. Appellant sued appellees and defendant Morse to recover the sum of $2,270 being the sum which he alleged that he had paid out for the account of defendant Morse in excess of the sum of the $4,000 which appellees had repaid, and which appellant alleged that appellees were bound to pay him by virtue of the agreement, or at least that by the acts and conduct of appellees they were estopped to deny that they owed appellant. Appellant also sued the Humble Oil & Refining Company for the aforesaid unpaid sum of $1,900, offering in his pleading to allow

any recovery thereof to be credited upon the judgment which appellant should recover from appellees and defendant Morse. It is sufficient to state that appellees crossacted to recover the sum of $1,970 from the Humble Oil & Refining Company. Said Company tendered same into court to be paid as the court should determine the same ought to be paid. None of the pleadings of defendant Morse, if any, have been brought up.

The court, trying the case without a jury, rendered judgment: That appellant should recover from defendant Morse the principal sum of $2,270; that appellant should recover nothing from appellees, or from the Humble Oil & Refining Company; that appellees should recover from the Humble Oil & Refining Company the sum of $1,970, which had been tendered into court; that appellees should recover nothing from appellant.—Appellant alone has appealed. In response to appellant's request, the court filed findings of fact and conclusions of law, as well as supplemental findings of fact.

Appellant has predicated his appeal upon three formal points. They are, in substance:

(1) That appellees are estopped to claim the sum of $1,970 tendered into court by the Humble Oil & Refining Company.

(2) The court erred in not rendering judgment for appellant against appellees for at least the sum of $750, which was paid by appellant to the H & W Tile Company.

(3) That finding of fact No. VI is without any support in the evidence, and is against the great weight and preponderance of the evidence.

■ We overrule appellant's first point. The trial court found that on September 16, 1952, defendant Morse abandoned his subcontract for appellees, and went to work for appellant on a job in Waco, and, of course, that appellant knew of such abandonment. The court further correctly found that appellees' written acknowledgment of August 9, 1952, set forth hereinabove, of Morse's and appellant's request to make all checks for work done on the subcontract payable jointly to Morse and appellant, in no way obligated appellees to pay appellant any sums not due under the subcontract. No sums were due by appellees to Morse under the subcontract because he abandoned it after he had received payment (made to him and appellant jointly) of $4,000; and, this for the very compelling reason that appellees were forced to complete the subcontract for the sum of $978.31 in excess of the amount of the subcontract price. Indeed, had appellees thought it worth their while, they could have recovered judgment against Morse for such excessive sum.

■ We find no basis in the record for holding that the appellees were estopped to claim the sum of $1,970 tendered into court by the Humble Oil & Refining Company. Perhaps had the appellees paid sums of money to defendant Morse upon the subcontract and concealed such payments from appellant, there might be some basis for appellant's plea of estoppel. But appellees here were compelled to complete the subcontract after it had been abandoned by Morse and this at a cost to them in excess of $900 of the amount that Morse had agreed to perform said subcontract for. Appellees, having completed the contract according to the plans and specifications, were entitled to demand and receive from the Humble Company the unpaid $1,970.

■ We overrule appellant's second point, which complains that the court did not allow him to recover from appellees the sum of $750 which he paid to the H & W Tile Company on October 11, 1952. This was after Morse had abandoned his subcontract. The tile in question had been sold to Morse and used in constructing the service station before Morse abandoned the subcontract. Before paying the $750 appellant asked the senior appellee if it was all right to pay the $750. Appellant testified that his reason for asking was because he wanted to know if the tile work had been

accepted by appellees. In this connection, the court found in his original finding of fact XVIII, "The payment of $750 for tile was made with the prior acquiescence of Defendant, Charles R. Baum & Son, who had previously paid to Defendant, Arthur C. Morse, all sums due him for the labor and material upon the tile work." The evidence showed that the tile work was completed and accepted by appellees before Morse abandoned his subcontract. It was only after such abandonment that appellees took over the performance of what was called for in the subcontract. In this connection, it seems clear that the tile company itself could only have recovered for the tile through Morse's right to recover therefor, and Morse, as we have seen, had no such right. The same holds good with respect to appellant, as appellant has failed to show that he had any right to invoke an estoppel in this connection.

We overrule appellant's third point complaining of the court's finding of fact No. VI, which reads:

"It was implied in the agreement between Plaintiff, Thomas F. Miller and the Defendant, Arthur C. Morse, that the Defendant, Charles R. Baum & Son, should make joint payment to Plaintiff, doing business as Major Supply Company and the Defendant, Arthur C. Morse, only of such sums of money as the Defendant, Charles R. Baum & Son, should owe to the Defendant, Arthur C. Morse, under the terms of the subcontract between the Defendant, Charles R. Baum & Son, and the Defendant, Arthur C. Morse, and such implied agreement was also so understood and implied by the Defendant, Charles R. Baum & Son."

That the foregoing conclusion of the court is correct is too clear to require any exposition. The very purpose of the subcontract was to fix the respective obligations of the parties thereto. Morse had the obligation to perform said contract for the price provided therein. This he failed to do, to the injury of appellees in the sum of $970. For reasons best known to themselves, they did not seek to recover said sum from Morse, but they were certainly under no obligation to pay Morse anything over and above the $4,000, which they did pay him. Nor was there obligation to make any further payment to appellant, who at best could assert only such rights as he was entitled to under Morse.

The judgment should be affirmed and it is so ordered.

Affirmed.